IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

MEDIA PRODUCT, INC.
DBA DEVIL'S FILM

9145 Owensmouth Ave.

Chatsworth, CA 91311

      Plaintiff,

vs.

DOES 1-59,

      Defendants.

CASE NO. 1-12-CV-00125-CM

OMNIBUS MOTION TO SEVER
DEFENDANTS AND/OR QUASH THE
SUBPOENA AND/OR ISSUE A
PROTECTIVE ORDER AND
INCORPORATED MEMORANDUM OF
LAW

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/12

## JOHN DOE'S OMNIBUS MOTION TO SEVER DEFENDANTS AND/OR QUASH THE SUBPOENA AND/OR ISSUE A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

      Defendant, John Doe, files this Omnibus Motion and moves this Court to: (first) sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21; and/or (second) quash the subpoenas directed at EarthLink, Road Runner and Verizon Internet Services (hereinafter "the ISPs") and/or issue a protective order limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45. This Court should grant the relief requested. In support, the Defendant relies on the following Memorandum of Law:

### I. ARGUMENT

      Plaintiff is improperly utilizing this Court's procedures to extort settlements from potentially innocent individuals. Plaintiff, and other mass-copyright plaintiffs, harass potentially

FEB 27 2012

PRO SE OFFICE

innocent individuals with threats of statutory damages and legal fees and embarrass them by naming them as defendants in actions for copyright infringement of explicit pornographic videos.

Courts addressing these pornographic movie infringement cases have expressed concern about such abusive settlement tactics. *See* e.g., *On the Cheap, LLC, Does 1-5011*, No. 10-4472-BZ, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011) (stating that settlement tactics result in the defendants being left with a "decision to either accept plaintiff's demand or incur significant expense to defend themselves" and such does not "comport with the 'principles of fundamental fairness'").

Specifically, Plaintiff has misjoined 59 unrelated Defendants and has caused the issuance of a Subpoena prior to the rule 26(f) conference seeking protected information as to John Doe's identity and anonymous online activities. Also, this Court should sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21. In the alternative, this Court should quash the subpoenas directed at the ISPs and/or issue a protective order limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45.

### A. Plaintiff's Joinder of 59 Unrelated Defendants in this Action is Improper

In its Complaint, Plaintiff improperly joined 59 unrelated individuals as Defendants to this lawsuit. Federal Rule of Civil Procedure 20(a)(2) provides, in relevant part, that defendants may only be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

"[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 866 86, S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The Federal Rules, however, also recognize countervailing considerations to judicial economy." *Alexander*, 207 F.3d at 1324. A motion for joinder may be denied if it would result in "prejudice, expense or delay." 7 Charles Alan Wright, et. al., Federal Practice and Procedure § 1652, at 396 (3d ed. 2001). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).

Numerous courts have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder, both in the Eleventh Circuit[1] and beyond.[2]

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the individual Defendants is sufficient to sustain their joinder in this action. However, an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she

---

[1] *See Raw Films, Inc. v. Does 1-32*, No. l:ll-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:1l-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, --F.R.D.--, No. 1:11-CV-21567-KMM, 2011 WL 5190106 (S.D. Fla. Nov. 1, 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, --F.D.R.--, No. 1:11-CV-21525-KMM, 2011 WL 5190048 (S.D. Fla. Nov. 1, 2011) (severing defendants).

[2] *See e.g., Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:1l-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

had any interaction with any of the other 58 Defendants in this case. As was noted in an analogous case recently decided in the Southern District of Florida:

> Under the BitTorrent Protocol, it is not necessary that each of the Does ... participated in or contributed to the downloading of each other's copies of the work at issue - or even participated in or contributed to the downloading by any of the [other] Does .... Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, —F.R.D.—, No. 1:11-CV-21567-KMM, 2011 WL 5190106, at *2 (S.D. Fla. Nov. 1, 2011) (quoting *Hard Drive Prods., Inc. v. Does 1- 188*, — F.Supp.2d.—, No. C-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011)).

District courts in the Eleventh Circuit and beyond have reasoned that John Doe defendants in analogous lawsuits were improperly joined based the large time span between each defendant's alleged sharing of the file. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT, slip, op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span of almost 3 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (time span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm*,—F.R.D.—, No. 1:11-CV-21525-KMM, 2011 WL 5190048, at *2-4 (S.D. Fla. Nov. 1, 2011) (time span of two months); *Hard Drive Prods., Inc.*, 2011 WL 3740473, at *13 (time span of two weeks).

In *Raw Films, Inc.*, the court found that "[d]ownloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." 2011 WL 6840590, at *2; see also *K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the court

reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other. For example, Doe 4, who is alleged to have been in the swarm on July 13, 2011, is unlikely to have been in the swarm at the same time as Doe 5, who is alleged to have been in the swarm on March 4, 2011.

*Id.* at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

In this case, Plaintiff's Complaint hollowly alleges that Defendants' alleged infringement was part of the same series of transactions or occurrences. However, Exhibit A to the Complaint shows that these transactions or occurrences happened throughout a time span of almost 8 weeks. (*See* Compl. Ex. A.) Rather than admit that Defendants were not using BitTorrent Protocol at the same, or even similar, times, Plaintiff instead focuses on its allegation that the Defendants were sharing the same piece (as denoted by hash tag) of its copyrighted work. However, this allegation does not warrant the implication that Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another. *See e.g.*, *MCGIP, LLC v. Does 1-149*, No. C 11-02331 LB, slip op., 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011) (finding misjoinder where the plaintiff failed to show that any of the defendants actually exchanged any piece of the seed file with one another); *Boy Racer, Inc. v. Does 1-60*, No. C 11-01738 SI, slip op., 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"). Plaintiff's allegations that Defendants committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transaction or occurrence. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the severance of the Defendants.

### 2.  Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether... judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., Federal Practice and Procedure §1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

Joinder of 59 unrelated Defendants in this case will result in severe practical problems moving forward. The Defendants, proceeding both *pro se* and through counsel, will likely assert different legal and factual defenses that apply to them particularly, or only a fraction of the 59 Defendants. Based on an individual Defendant's circumstances, he or she may be asserting legal defenses based on: copyright invalidity, de minimums copying, fair use, grant of permission or a license, copyright misuse, acquiescence, unclean hands, and/or estoppel. Further, the individual Defendants are likely to put forward a variety of factual defenses and will identify different witnesses. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

As the case proceeds, Plaintiff is likely to make further discovery requests against each individual Defendant that will further increase complexity and cost. This is the exact situation in

which the Northern District of California found itself when it failed to sever the 52 defendants in a similar case:

> [Plaintiff] would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and computers of those sharing his internet network.... Presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game. Beyond such an inspection, [Plaintiff] might require still more discovery, including interrogatories, document requests and even depositions.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order denying further discovery).

The courthouse circus which will likely ensue if the Defendants are not severed will result in inefficiency for the Court and prejudice the Defendants moving forward. *See, e.g., Pac. Century Int'l Ltd. v. Does 1-101*, No. C-l 1-02533-(DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) ("An internet based copyright infringement case with at least 101 defendants would prove a *logistical nightmare*." (emphasis added)); *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them - all of which they must pay their attorneys to review."). To prevent prejudicing the Defendants and maximize judicial economy, this should sever the individual as and dismiss the Defendants from this case.

### B. Plaintiff's Subpoena is Improper and Must be Quashed

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party in the pending action and is reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If a subpoena falls outside the scope

of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served, or a party challenging the relevancy of, or claiming a privacy interest in, the records sought. *See* Fed. R. Civ. P. 45(c)(3).

This Court, in its Order Granting Plaintiff's Motion for Leave to take Discovery Prior to Rule 26(f) Conference, explicitly recognized Defendants' right to challenge the Subpoena. (*See* Order Granting PL's Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference: "[S]uch notice shall inform the subscribers of their right to challenge the subpoena in this Court"). The Subpoenas issued to the ISPs should be quashed pursuant to Rule 26 of the Federal Rules of Civil Procedure because Defendant: (1) challenges the legal sufficiency and legitimacy regarding Plaintiff's request for early discovery that produced the Subpoena, for which Defendant was never given notice or an opportunity to be heard, and (2) claims a privacy interest in the records sought.

### 1. Defendant Objects to the Early Discovery that Plaintiff Seeks Through its Subpoena

Discovery is normally barred prior to the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except... when authorized by these rules, by stipulation or by court order."). Courts apply this rule even when considering subpoenas issued to non-parties. *See Crutcher v. Fidelity Nat'l Ins. Co.*, Civ. No. 06-5273, 2007 WL 430655, *2 (E.D. La. Feb. 5, 2007).

Plaintiff has misled this Court by suggesting that it will be able to identify the Defendants through issuance of subpoenas to the ISPs. The Plaintiff's counsel filed a similar case *Digital Sin, Inc. vs John Does 1-176* No 1:12-CV-00126-AJN, where District Judge Alison J. Nathan noted in the Opinion And Order Permitting Limited Expedited Discovery Pursuant To A

Protective Order.

> Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not
> those of individuals who actually downloaded or shared copyrighted material.
> Counsel stated that the true offender is often the "teenaged son... or the boyfriend
> if it's a lady" (1/17/12 Tr. at 16).

*ID.*   By the counsel's estimate, more than 17 of the 59 Defendants are not be the alleged

infringers of copyrighted material.  An IP address can only identify a subscriber to an ISP; it does

not identify the specific identity of the person that actually engaged in the alleged infringing

activities.  To successfully identify the claimed infringers, Plaintiff would need extensive

additional information that cannot be gleaned from information requested by the Subpoena.

Indeed, Plaintiff's inaccurate portrayal of the facts required to identify infringers was exposed in

a similar lawsuit just three months ago, *Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG

(N.D. Cal. Sept. 13, 2011) (order denying further discovery; order to show cause).

> In that case, after issuing a substantially identical subpoena and representing to the court

that each IP address corresponded to a defendant, the plaintiff was forced to admit that the

subscriber information linked to an IP number was legally insufficient to identify a defendant and

really just the starting point for a far more invasive investigation. In rejecting that plaintiff's

attempt to expand its discovery beyond its initial representations, the court quoted the key

admissions to the plaintiff's argument as follows:

> While Plaintiff has the identifying information of the subscriber, this does not tell
> Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff
> will name as the Defendant in this case. It could be the Subscriber, or another
> member of his household, or any number of other individual who had direct
> access to Subscribers network.

> [Accordingly:]
> Plaintiff plans to request a limited inspection of Subscriber's electronically stored
> information and tangible things, such as Subscriber's computer and the computers
> of those sharing his Internet network, for the purpose of finding the individual that
> unlawfully violated Plaintiff's copyrighted works by uploading/downloading the

file referenced BitTorrent, or to see whether such information has since been erased contrary to instructions by Verizon Online and Plaintiff's attorneys.

*Id.* at 4 (withdrawing its prior order granting limited early discovery and denying further discovery requests because "[presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game") (internal quotes and citations omitted).

In *VPR Int'l v. Does 1-1017*, the court came to a similar conclusion and denied the plaintiff's motion for expedited discovery. *VPR, Int'l,* 2:11-CV-02068-HAB-DGB (CD. Ill. April 29, 2011). The court noted that subscriber information requested from an ISP would be insufficient to identify an infringer who "might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.* at 2. To illustrate this fact, the court noted an instance involving a raid by federal agents on a home that was linked to downloaded child pornography.

> The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection form the State University of New York).

*Id.* at 2 (citing Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/). The court opined as to the plaintiff's true motives. *Id.* at 3 ("Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.").

**2. The Subpoena Issued by Plaintiff Seeks to Discover Protected Information**

### and Violates the United States Constitution

The essence of the discovery sought through the subpoena at issue in this case is the identity of individuals engaged in anonymous online communication.[1] Accordingly, the First Amendment applies and Plaintiff must demonstrate its legitimate need for the information before being able to overcome the right to engage in anonymous speech. *Sinclair v. TubeSockTedD*, 596 F.Supp. 2d 128, 131 (D.D.C., 2009); *see generally Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997); *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 341-43 (1995). As noted in *Sinclair*, individuals engaged in anonymous online communication may be identified only if Plaintiff meets a multi-factor test designated to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously. 596 F.Supp. 2d at 132. In particular, Plaintiff must come forward with prima facie evidence that each particular Defendant infringed the Plaintiff's rights before that Defendant's identity is disclosed. *Id.* Here, Plaintiff fails to address the First Amendment constitutional issues raided by Plaintiff's attack on the Defendants' anonymous speech, and has even failed to create a prima facie record to support its allegations that any of the Defendants, engaged in or contributed to copyright infringement.

The only factual support that Plaintiff provides for the allegations in the Complaint are a list of IP addresses from which it is alleged infringing activity took place, supplied by Copyright Enforcement Group, LLC ("CEG") and the Declaration of John Nicolini, CEG's Vice President, attesting to the highly technical computer-based applications and methodology which he claims identify the Defendants as alleged infringers. However, this Court must heavily discount, if not

---

[1] Additionally, Defendant maintains a privacy interest in his or her identifying information on file with the ISPs, and claims that it is protected information in and of itself. *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (As bank customer, defendant had a personal right with respect to its bank account records at banks which were subject of subpoenas duces tecum issued by plaintiff, and that right gave defendant standing to move to quash the subpoenas); *Broadcort Capital Corp. v. Flagler Securities, Inc.*, 149 F.R.D. 626 (Nonparty and defendant in securities action had standing to object to subpoena duces tecum of telephone company records based on claim that records were privileged, despite contention that only the served party could object).

dismiss, any evidentiary support these items may lend to Plaintiff's Complaint upon information and belief CEG is actually an interested party in this litigation, rather than an independent witness as Plaintiff would have this court believe.

It is widely accepted that "it is improper for an expert to be compensated on a contingent fee basis." Michael H. Graham, 5 Handbook of Fed. Evid. § 702:3 (7th ed.); *see Person v. Ass'n of the Bar of the City of New York*, 554 F.2d 534 (2d Cir. 1977); *Swafford v. Harris*, 967 S.W. 2d 319 (Tenn. 1988); *Dupree v. Malpractice Research, Inc.*, 445 N.W. 2d 498 (Mich. 1989); *Polo v Gotchel*, 542 A.2d 947 (NJ. 1987). "An agreement to give an opinion on a contingent basis, particularly on an arithmetical scale, attacks the very core of expert testimony." *Gediman v. Sears, Roebuck & Co.*, 484 F.Supp. 1244, 1248 (D. Mass. 1980). Such an agreement is classified by Williston on Contracts, 3d ed. 1972, Section 1716 under "Bargains Obstructing Justice." *See also*, Restatement of the Law, Contracts, 1932 § 552(2).

While acknowledging that Plaintiff is a client of CEG, neither Plaintiff nor Declarant Nicolini ever specifies to the court how CEG, and thus the Declarant, were compensated. A brief review of CEG's website reveals that their services are offered "at no cost to content owners." Copyright Enforcement Group, Monetization, http://www.ceg-intl.com/monetization.html [Attached hereto as Exhibit A and incorporated by reference herein as if set forth verbatim herein]; *also* Press Release, Copyright Enforcement Group, New Anti-Piracy Solutions and Business Intelligence Services Launched by Copyright Enforcement Group (CEG) (Jan. 11, 2012), http://www.prweb.com/releases/2012/1/prweb9087878.htm ("available at no cost to content owners") [Attached hereto as Exhibit B and incorporated by reference herein as if set forth verbatim herein]. The only reasonable explanation for this "no cost" service is that CEG is being compensated from a percentage of the settlements and/or judgments resulting from this

litigation.

The opacity of how Plaintiff and Declarant treat this issue is particularly alarming. As one court noted: "[t]he concealment of a contingent financial arrangement with a witness would be unconscionable. With the disclosure of such an arrangement, an opinion proffered by an expert would likely be so undermined as to be deprived of any substantial value." *Creative Dimensions in Mgmt., Inc. v. Thomas Group, Inc.*, No. CIV. A. 96-6318, 1999 WL 135155, at *2 (E.D. Pa. Mar. 11, 1999).

Declarant's undisclosed financial interest in this litigation is likely one of the reasons that the Declaration did not address the error rate of the software used to identify Defendants, and erroneously concluded that Defendants, as ISP subscribers, were the individuals involved in copyright infringement activity.

The Declaration would have this Court believe that CEG's highly technical methods used to identify IP addresses from which allegedly infringing activity took place are highly accurate, but recent studies have shown that similar software produces a large number of false positives. A recent study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks -or- Why My Printer Received a DMCA Takedown Notice*, 3rd USENDC Workshop on Hot Topics in Security 2008, (July 29, 2008) http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically, the article concludes:

> [W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

*Id.*

Also, and as noted above, the Declaration makes no accounting for actions engaged in by third parties using Defendants' networks. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

The undisclosed nature of CEG's compensation and the likelihood that it is in some way contingent upon this litigation strongly violates public policy and renders the Declaration and other evidentiary support produced by CEG so necessarily flawed that they cannot not assist this Court in determining the facts of this case. Plaintiff is attempting to obtain Defendant's Constitutionally protected information without even being able to create a prima facie record to support its allegations that John Doe, or any of the Defendants, engaged in or contributed to copyright infringement. As such, the Subpoena should be quashed.

### III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants' contact information for use in extracting large settlements than the formalities of the legal process and privacy interest of the affected individuals. Plaintiff has repeatedly misled the court in its representations supporting joinder of the Defendants and obtaining early discovery. CEG and the Declarant Nicolini's undisclosed financial interest in this litigation destroy any credibility of the

Declaration and other factual support produced by Nicolini and CEG. Plaintiff's joinder of Defendants is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendant while undermining judicial economy. Plaintiff's Subpoena should be quashed because Plaintiff misled this Court in obtaining an Order granting early discovery, seeks protected information, and violates the United States Constitution.

WHEREFORE, premises, considered, John Doe respectfully requests that this Court:

(A) Sever and dismiss all Defendants pursuant to Federal Rule of Civil Procedure 21 and require Plaintiff to bring individual actions against each Defendant, if it chooses to do so, in the appropriate venue;

(B) Quash the Subpoenas to the ISPs pursuant to Federal Rule of Civil Procedure 26;

(C) Enter a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure, staying all discovery in this case (and the use of any information already obtained by the Plaintiffs in discovery) until such time as the interests of John Does can be heard anonymously and considered by a court of proper jurisdiction;

(D) Grant such other and further relief to John Does as may justly be entitled.

Dated: 02/24/2012                           Respectfully submitted,

                                            */s/ John Doe*
                                            John Doe
                                            *Pro se*


CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing Motion was served as follows:

| Via First Class Mail, postage pre-paid<br>U.S. District Court<br>Southern District of New York<br>500 Pearl Street<br>Room 230, 2nd Floor<br>New York, NY 10007 | **Via facsimile: (404) 287-4905**<br>EarthLink Legal Dept./Subpoena Compliance<br>1375 Peachtree Street<br>Level A<br>Atlanta, GA 30309<br>Tel: (404) 443-4365<br>Fax: (404) 287-4905<br>*Interested/Subpoenaed Party* |
|---|---|
| **Via First Class Mail, postage pre-paid**<br>Mike Meier<br>The Copyright Law Group, PLLC<br>4000 Legato Road, Suite 1100<br>Fairfax, VA 22033<br>Tel: (888) 407-6700<br>Fax: (703) 546-4990<br>*Attorney for Plaintiff* | **Via facsimile: (704) 697-4911**<br>Time Warner Cable (Road Runner)<br>Subpoena Compliance Team<br>13820 Sunrise Valley Drive<br>Herndon, VA 20171<br>Tel: (703) 345-3422<br>Fax: (704) 697-4911<br>*Interested/Subpoenaed Party* |
| | **Via facsimile: (325) 949-6916**<br>Verizon Legal Compliance<br>Custodian of Records<br>P.O. Box 1001<br>San Angelo, TX 76902<br>Tel: 1-888-483-2600<br>Fax: (325) 949-6916<br>*Interested/Subpoenaed Party* |

This 24th day of February 2012.                    */s/ John Doe*

                                                                 John Doe

# EXHIBIT A

Copyright Enforcement Group

about | services | technology | press / news | partners | contact

TECHNOLOGY PROTECTING **CREATIVITY**

CURRENTLY PROTECTING  20727  COPYRIGHTS

sign up for a free consultation

*name*

*email \**

*phone*

GET CONSULTATION

# MONETIZATION

## how much are you losing to copyright infringement?

It's estimated that digital piracy accounts for almost one quarter of Global Internet traffic.† CEG's premier Monetization service protects and monetizes all types of content including video, audio, images, text, software, and video games across multiple Peer-to-Peer protocols and websites.

## pinpoint digital copyright infringement

Using our proprietary next-generation scanning and cutting edge digital matching technology, our Monetization service provides perpetual global monitoring of your content for copyright infringements across multiple Peer-to-Peer protocols and websites.

➢ Peer-to-Peer (P2P) Networks: BitTorrent, eDonkey, Gnutella, Gnutella2, Ares, Kazaa
➢ Websites: Corporate, Commerce, Commercial, Small Business, Ad Supported, News Conglomerates, Entertainment, Lifestyle, and more

Infringements are tracked and authenticated using a strict multi-stage process, involving automated matching and dual-human verification, effectively eliminating all false positives. Every infringing file is then traced to determine the host or Internet Service Provider (ISP). Customizable notices are automatically generated and sent directly to infringing parties or via an ISP. Infringers receive the notification directing them to Copyright Enforcement Group's branded settlement portal www.copyrightsettlements.com, where they can chose amongst multiple settlement options.

## recoup revenue from digital piracy

Establish a new revenue source while offering infringers multiple settlement options with our Monetization service. Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless.

Content owners can choose a soft fan-friendly marketing based approach, a stringent graduated response system, models that include litigation, leveraging CEG's vast intellectual property attorney network or anything in-between.

Our fully customizable Monetization service solution is available at no cost to content owners. Contact us for additional details.

† Price, David. *"Technical Report: An Estimate of Infringing Use of the Internet".* http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf. Jan 2011.

MONETIZATION

TRACKING

TAKEDOWN

BUSINESS INTELLIGENCE

Track your copyrighted content across the globe. Utilizing cutting edge technology, SATellite.
[read more]

Our secure, web-based client portal, provides real-time piracy data and statistics 24 hours a day, every day.
[read more]

© 2011 Copyright Enforcement Group. All rights Reserved.

# EXHIBIT B

 **PRWeb**
Online Visibility from Vocus

United States                                                          Login

| Front Page | Arts | Business | Education | Environment | Government | Industry | Lifestyle | Sports | Tech | Other |

Monday, February 20, 2012                                    🔊 RSS   E-mail Newsletters   Put PRWeb on your site

# New Anti-Piracy Solutions and Business Intelligence Services Launched by Copyright Enforcement Group (CEG)

Copyright Enforcement Group (CEG) today announced the launch of comprehensive anti-piracy solutions and in-depth business intelligence services including Infringement Monetization, Content Tracking, Content Takedown, and Business Intelligence.

Beverly Hills, CA (PRWEB) January 11, 2012          ✉ Email   📄 PDF   🖶 Print

Copyright Enforcement Group (CEG) today announced the launch of comprehensive anti-piracy solutions and in-depth business intelligence services including Infringement Monetization, Content Tracking, Content Takedown, and Business Intelligence.

CEG's new line of fully-customizable services gives way to multiple anti-piracy solutions including a fully-customizable Monetization service solution that is available at no cost to content owners.

Infringement Monetization: CEG's premier Monetization service protects and monetizes all types of content including video, audio, images, text, software, and video games across multiple Peer-to-Peer protocols and websites.

Content Tracking: CEG's Data Services identify infringements and provide an invaluable, perpetual flow of raw data.

Content Takedown: CEG's proprietary Takedown Notice service provides perpetual global monitoring and managed takedown notifications for copyright infringements across multiple Peer-to-Peer protocols and websites.

Business Intelligence: CEG's Business Intelligence service provides the data analysis necessary to accurately interpret data and facilitate pertinent business decisions.

SATellite, CEG's proprietary platform, has centric capabilities geared towards the perpetual surveillance of multiple Peer-to-Peer protocols (P2P) and websites; it is the backbone of CEG's extensive line of anti-piracy and business intelligence solutions. The cutting edge technology enables CEG to track, monetize, and analyze all forms of copyrighted content - audio, video, image, text, video games and software - across multiple Peer-to-Peer protocols (P2P) and websites.

To learn more about CEG's Services and the SATellite Platform, please visit http://www.ceg-intl.com. To schedule a free consultation please call 877 5 COPYRIGHT (877 526 7974) ext 175 or email salesteam(at)ceg-intl(dot)com.

About Copyright Enforcement Group
Copyright Enforcement Group (CEG) provides first-in-class copyright protection, offering comprehensive anti-piracy solutions and in-depth business intelligence to copyright owners worldwide. Cutting edge technology enables CEG to track, monetize, and analyze all forms of copyrighted content - audio, video, image, text, video games and software - across multiple Peer-to-Peer protocols (P2P) and websites. To learn more about CEG's services, please visit http://www.ceg-intl.com.

###

**Contact**

**PR Department**
Copyright Enforcement Group
877-526-7974
Email

**Attachments**

COPYRIGHT   Copyright Enforcement
ENFORCEMENT GROUP   Group Logo

CEG Logo



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

# MEMORANDUM
*Pro Se* Office

**To:**     The Honorable *Colleen McMahon*

**From:**   _____, *Pro Se* Clerk, x0177          **SCANNED**

**Date:**   *2/29/12*

**Re:**     *Media Product v. Does 1-59*, No. *12* Civ. *125* ( *CM* )

The attached document, which was received by this Office on *2/27/12*, has been submitted to the Court for filing. The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. See Fed. R. Civ. P. 5(d)(2)(B), (4). Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( X )   No original signature.

( )   No affirmation of service/proof of service.

( )   The request is in the form of a letter.

( )   Other:_____

_____

_____

_____

_____

_____

( X )   **ACCEPT FOR FILING**          ( )   **RETURN TO *PRO SE* LITIGANT**

_____
United States District Judge

Comments:

_____
United States Magistrate Judge

Dated: